Good morning, your honors. My name is Jeffrey Wise. I'm here on behalf of Fanucchi Leamy Farms and Richard Leamy and Larry Fanucchi. May it please the court, to begin with, I would like to reserve five minutes of my time for purposes of rebuttal. If the court would like, I would be happy to go through some of the facts behind this that give rise to this case, but if there are no specific issues that the court wants addressed from the facts. The specific issue I have difficulty with, and if you keep it in mind through your argument, you have specific written language saying there's no modification of the initial agreements unless they're in writing or unless there's been performance. And I just want to be sure that's not a bar to any oral modifications. Very well. And I'll address that first. And in that connection, were there writings that attach to any of the successive oral agreements that recorded them or memorialized them? So you can address those together if you wouldn't mind. Yes, and I'll try to incorporate those. To begin with, the issue of oral modification of a written agreement, the bar that you're speaking of, and it was addressed primarily by the underlying court, is found at section 1698. Or 1698C of California Civil Code. Section 1698C says unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. And it goes on with statute of frauds issue. The problem is that language found in a contract that prohibits any oral modifications and that all future modifications must be in writing is applicable only to subsection C of 1698. We also have subsection A, B, and D. Now of relevance and major importance are sections B and D, primarily D. And to address that, let me recite a couple of the facts. You're starting with the statute and I'm starting with the agreements that say that there's no modification unless in writing attached to the agreement. Right. The only section that that bars, though, is section C. What about the contract? The contract bars it.  No alteration or amendment of this agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment. Specific language, contractual language. Correct. That's what the contract says. However. 1944 1994 loan agreement. Right. Section 1698. Before you go to the just to keep you on the contract track, is it not the case that each of the oral modifications were in fact also memorialized in a written document? In various ways. But that also comes into play. For example, the oral agreement contained essentially five sections. We're going to immediately cease accrual of interest. Now, one thing to keep in mind, this occurred after the plaintiffs had considered bankruptcy. They had spoken to bankruptcy counsel and they met with a representative for UAP at the office of their bankruptcy counsel. They used a conference room in the back. And Wayne Keyes said on behalf of UAP, look, we've been hit hard by bankruptcies from farmers because 1994 was a bust year. We'll do anything to keep you from filing bankruptcy. Here's what we want to do. First, we'll cease accrual of interest. Second, we will be willing to subordinate to any future lenders you obtain for a period of up to five years to try to rehabilitate this debt. If you manage to pay this debt down to approximately $300,000, $400,000, we'll walk from the remaining principle. And for your other creditors that are out there, we're willing to split proceeds on a 60-40 basis. We take 60%. You can divvy up the other 40% of proceeds to your other creditors to keep them from foreclosing and doing other things. My client said, great. Now, in terms of a written agreement, that was never explicitly written down in a single agreement. What we do have is, for example, an internal memo within the UAP files that says, subsequent to this conversation, cease accruing interest on this account now. Then we have the upcoming year, 1998, where UAP does everything they agreed to, and they reduce it to writing, but they tend to say, well, this is for 1998 and those agreements. For example, there's a written subordination to Jeff Smith & Sons, which was the crop financer for 1998. I'm sorry, 1997. There was also written subordination to my client's parents, who owned the property that they were leasing. They forewent on lease payments until the conclusion, and they also lent them some other crop financing money. That was reduced to writing. UAP wrote up a subordination to the parents on that. In the end of 1997, when the funds come in, they do pursue it to the agreement. They dish out 40% to the other creditors. Everything goes smoothly. 1998 rolls around, and the discussion is, we're going to do everything the same. It worked well. We got money. Not only did we get approximately $60,000 in net, we received substantial payments from government subsidiaries and affiliated programs, which helped reduce your debt. So we liked it. Wayne Key says, do it again. Same thing. Let's keep going. The problem is, is 1998, UAP only writes a subordination agreement to Jeff Smith & Sons. And then there's some discussion and controversy over what the status is on the 60-40 split with the other creditors. At the end of 1998 and during 1998, my clients are calling and asking, look, I want to make sure parents are going to get paid at the end of all this. Wayne Key says, yeah, that's how it's going to work. Then in the middle of 1998, Wayne Key says, look, I'm retiring. I'm getting out of here. I'm leaving. But there's a new gentleman taking over, and don't worry, I'll get him up to speed on this. He'll be familiar with it and everything that's going on. And during the course of this, my clients are continually represented that everything's going to go just like it had the year before. However, when 1998 rolls around, their parents hadn't received the money, so they call and speak to Jerry Simmons, the new gentleman handling the account, and ask, what about the money coming back to my parents? He says, well, we're not going to give them anything, and we're not going to give the other creditors anything because we have nothing in writing that says we have to. And shut down the operation. And the problem is, as was asked, there are several documents which reflect those agreements. 97, it's all documented. 98, it gets partially documented. But that's where it ends. Well, what is the reference? That's what I was, like Judge Beezer, I start with the contract, and I'm trying to find where in the contract. I see this ER-157 letter, the January 5th, 97 letter from Bruce Carter to Al Pacini. Is that where it's all, the original deal you described is all described in writing? Not all of it, but a substantial part of it. Is there any other written document that picks up the rest of it? Yes. For example, there's the internal memo from UAP that says cease the accrual of interest. And then there's, I believe, a letter. That's not an agreement between the parties. That's an internal memo, right? Well, it's an internal memo reflecting part of the term, one of the terms of the agreement. In order to be an enforceable written agreement, it doesn't necessarily have to be a written agreement between the parties. It has to be a written reflection by one of the parties in order to be enforced against that party. And that's what that internal memo does. You can have a modification of the agreement where there's a writing by the lender in the lender's file that's never been communicated to the borrower, and that's part of the contract? Yes. Even if it's detrimental to the lender? Yes. I mean detrimental to the borrower? No. It can only be used and enforced against the writer. And that document's unsigned? I believe it was signed by the internal UAP representative writing it, but I can't warrant that. What's the exhibit number or site to that internal memo? I believe it was produced at. Let me ask you this. Did the district court make that finding? I'm sorry? Did the district court make that finding? With respect to that memoranda? I don't believe they did. I don't believe the district court did make that finding. It would be included as Exhibit 1 to my declaration attached to the opposition motion for summary judgment, which I believe is bait stamped as 155 in the record. Now, getting back to the issue of contract and the enforceability of the oral agreement, there was a lot of emphasis placed in the ---- All right. I want to make sure I follow your argument here. What you are saying we should look to is the written evidence, either by way of an actual communication or a written memorandum, is the January 597 letter and the internal memo regarding accrual of interest. Now, I think you said something, part of the agreement is also walking away from the balance of the obligation over a period of time. A substantial portion of the debt. Okay. Where is that reflected? That portion was never reduced to writing. And that was a forgiveness of how much? Approximately $300,000 to $400,000. Okay. One of the emphases to keep in mind is that in the beginning of this, when UAP Representative Wayne Keyes got together with my clients, it was well understood that this debt was not going to be repaid in its entirety. The option my clients were facing was bankruptcy to eliminate the entire debt. They wanted to try to avoid that, if at all possible, to save reputation and other problems. So they were willing to work on something. But the fundamental understanding at that meeting, when this new agreement was reached, was this debt, as written, was not going to be repaid in its entirety. And let me understand the argument in terms of where we go. Once Keyes is gone, once Jerry Simmons comes in and Jerry Simmons says, you know, there's nothing in writing, we're not going to pay your parents, we're not going to pay the other creditors, your client is now trying to enforce what specifically? Nonrepayment of $300,000 to $400,000 in capital? Does he want a similar arrangement, not just for 98, but for future years, up to 5 years? I mean, what does he say is the new contract? The new contract is what was discussed with Wayne Keyes, and that included the ceasing of interest as of 96, per the memo, that they would be allowed the opportunity to rehabilitate and try to pay this debt down by continuing operations, which meant that they would subordinate an interest to all future lenders, and that proceeds from the sales of those crops would go to pay other outstanding debts, other outstanding creditors that they had negotiated, stipulated judgments with in order to try to work this out. What they're asking for is elimination of the debt from UAP. How much is that debt now, or how much was the debt at the time the lawsuit was filed? That's in dispute, and the problem with that is, as represented in UAP's brief, they say at one point that the debt as of 96 was approximately $837,000, but then later on they turn around and say, well, the debt's in excess of a million dollars plus interest currently. And fees and costs. No. Exclusive of fees and costs. And the problem with that is there were substantial payments. There were 97 payments and 98 payments made towards that debt. So if somehow there's a dispute. We're talking a lot of money. Right.  We're probably talking more than the $300,000 to $400,000 that Mr. Keyes might have said, listen, we're going to walk away from it if you can pay it down to that amount. Well, one of the problems is we've never, since this case ended before we got into the damages phase of discovery, there was a lot of dispute as to the status of that debt, whether or not it was in fact paid down, because plaintiffs had not. I'm less interested in the precise numbers than I am in trying to figure out, well, what exactly do you claim is the contract that you have? I understand the contract you claim you had in 97 that was actually performed. I understand the contract you claim you had in 98 that was partially performed. But I don't understand. I mean, there are other things going on here that aren't yet described in terms of what the contract is you think you have and you're trying to enforce. The contract that was trying to be enforced was the agreement was to be up to 5 years. They were supposed to have up to 5 years to work this debt out. They were not allowed the opportunity to do that. And up to 5 years at whose option? I mean, they got part of it, and it doesn't say you get 5 years. It says you get up to 5 years. Right. As long as the original understanding was as long as you're continuing to make progress on getting this repaid, you keep going. But we don't have any sort of performance evidence of the 5-year term. Do we have any written evidence of the 5-year term? We don't have written evidence of it. That's one of the problems. What we have is that we don't have any performance evidence of 5 years because they simply didn't get past 98 before it blew up on them. Correct. Now, I realize I'm running short on time, so. If you wanted to get to the statute and you were trying, I think, to say that because C is the only one that has the qualifier of unless the contract otherwise expressly provides and so on, you invoked subparagraphs B and D, and I think correctly said if you've got leverage anywhere, traction anywhere, it would be D. And are you referring to the novation argument? Both the novation argument and the estoppel argument. And as written, 1698 says, A contract in writing may be modified by a contract in writing. And it goes through and says, unless, for example, B. I'll start there. A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. Well, we had execution and performance in the first year of this. Well, so that was enforceable. So that was done. It's been executed. That doesn't get you to the end of just because they partially perform. It says to the extent it's been executed. By definition, that means that they're still unsettled. That's what the novation concept. Right, which takes us down to D and the issue of novation, which was one of the issues raised in the underlying hearing on the MSJ and discussed. The novation, as set out by the Court in its decision, the Court followed UAP's representation that the primary reason that novation wasn't found was because you still had a similar term in the new agreement as the old agreement, which was the debt. The debt still existed. The problem is that that's not true. We had substantial change in the foundation of the debt. We had an agreement that the debt was not going to be repaid in full. We had an agreement that the debt would cease accruing interest and adding back to principal. So we had modification of all terms of the original agreement, which does meet the criteria for novation. As outlined by plaintiffs in the paperwork, novation is defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to its creditor by the substitution of a new creditor. That's the American Flint Glass Works Union case and a couple of other cases cited. And there's also sites to other cases as well as restatement that outlines novation that clearly fit the pattern we have here. There was a clear novation. We had an absolute new agreement that took the place of the old one. It was understood that the old one was not going to function. If that was still going to be enforced, my clients were filing bankruptcy, which gets us to Part D also on the estoppel argument, which the Court ignored and didn't address in its decision. And it's very important because this case clearly had an issue of promissory estoppel and detrimental reliance, which even if the contract modification, if a breach of contract based on oral modification goes away, then detrimental reliance claims still exist as a subset of the claims. In other words, there's no relevance to the detrimental reliance issues of whether or not the oral modifications are enforceable. And that also is evident by Part D where it says, nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel. The argument is clear. UAP should be stopped from asserting this argument of full integration and requirement that everything be in writing in order to modify because they're the ones that are the sophisticated businessmen. My clients are unsophisticated farmers. UAP represented to them this is what we're going to do. They represented to them throughout 97, 96, 97, and throughout 98, this is what we're going to do, until the end when they shut it down and said, well, we don't have it in writing, so we're not going to do it. You say your clients are unsophisticated farmers, but I understand that the first working out with Mr. Keyes was in the office of the bankruptcy lawyer. So, I mean, they clearly had access to lawyers. Correct. But, again, they had phone calls to Wayne Keyes throughout 97, 98, asking, look, I want to make sure everything's going smooth. Actually, you know, I think we have this in hand and we've got your saying things that we know already. Why don't we hear from the other side and we'll give you a couple minutes for rebuttal because your time's run. Thank you.  Thank you. If it please the Court, Elizabeth Jones on behalf of Apelli Unite Agri Products Financial Services. I'd like to first, unless the Court has specific questions for me, try to answer some of the questions that the Court has just posed to Mr. Watts. The first question was whether or not there was any aspect of the integration clauses that were subsequently modified or addressed in either the alleged oral agreements or in the written modifications. And the answer is no. Those clauses remained intact and there was nothing indicated in either the written modifications that occurred or in the oral agreement as alleged that would negate the effect of those integration clauses. The second question that the Court asked was whether or not the components of the breach of contract claims that is currently being alleged are based on a written document or if they are entirely oral. And the answer is they are entirely oral. The breaches that are being alleged are UAP Financial Services' failure to subordinate in 1998 to Leaney and Finucchi's parents. That does not appear in any written document. A second component of the alleged breach, again breach, is in 1998 there was no profit-sharing 60-40 split as there had been in 1997 and as was memorialized in writing in 1997. In 1998 there's no profit split and there's nothing in writing to reflect any agreement to split the profits on a 60-40 basis. The third component of their breach claim is that UAP Financial Services failed to continue to subordinate its interests to outside crop financers or split the proceeds on a 60-40 basis for years beyond 1998. So those components of the breach that plaintiffs are alleging or appellants are alleging were all wholly and completely oral. There's nothing in writing to memorialize those. On the subordination of the Finucchi's, Exhibit 42 ER 157 does provide at least for 1997, as I understand it, as of the January 5 letter, a subordination, does it not? Absolutely. And there's no dispute. That was in writing. There's no dispute that in 1997 UAP Financial Services agreed to subordinate its interests to and also to the Finucchi and Lieny parents. That's consistent with their belief that it was represented to them that that was the deal. The modification struck and it's now been reduced to writing. So it isn't just their word out of the blue. There's actually a written document that is consistent with that oral understanding. What becomes their word out of the blue is any obligation to continue that arrangement beyond 1997. But that's a big difference in saying none of that is in writing. In fact, as counsel went through, he acknowledged that some of it is and some of it isn't. It's your construction that that's limited to one year. But at least for purposes of contract, isn't there a plausible argument that this written memorialization reflects a significant part of what they agreed to orally and therefore could arguably constitute the requisite written modification required by the integration clause? Had that subordination agreement not specifically and explicitly been limited to 1997 and instead be somehow dealing with continuing that obligation outside of 1997,  but what the court is saying is that if you have a specific modification limited to 1997, that we're going to see that as part of an overall five-year agreement to continue subordination obligations beyond that. And I do not think that that is what the law in California would how it would construe a written modification. It only modifies the agreement to the extent covered in the written modification. Just looking at that document, I don't have the attachment. So on its face, the document doesn't limit it. But do the attached documents limit it? Is that what you're saying? Those are actually, yes, Your Honor. And those are all set forth in our opening brief. Yeah. No, I know that. I just don't happen to have it right in front of me. So according to the attached acknowledgment and agreement, that's what limits it just to the one year? Right. If you look at actually our opening brief on this issue, we've highlighted and emphasized the portions of that agreement and the attachment that are limited to 1997. Okay. So both the UCC document and also the acknowledgment form are both limited to 1997. Okay. Thank you. You know, I'm tempted to find, to hold, that there is at least the possibility, subject to testimony, that there was an ovation here. Why is there no ovation? Several reasons. The first is that the law is very clear that in order for there to be an ovation, it must clearly have extinguished all aspects of the party's earlier agreement. Now, let's talk about what was not extinguished. And I'm going to start with something other than the debt obligation first, and that is the continuing security interest. The entire need for UAP financial services to continue to subordinate in 1998, in 1999. But if you have that idea as to what's required for an ovation, that means you can never have an ovation where the new contract overlaps in some material way with the old contract. Well, because an ovation is a pretty powerful notion. I understand. But your argument here as to all elements would mean that, well, you can't be talking about indebtedness. Well, an ovation of a contract tends to take one contract and to replace it with another, but it covers roughly the same subject matter. So I think you are here requiring too much for an ovation. Well, I don't think I am, Your Honor. And this is why there are two major components of the underlying loan agreements that were not novated by the subsequent alleged oral agreement. Had this just been a small, slight aspect, then I would agree with you if I were pointing out to an attorney fee clause that was present in the 1994 loan agreement but didn't continue in the novated contract. Maybe there would be an argument there. But here, the two fundamental obligations that existed by virtue of the 1994 loan agreement were the obligation to repay the money and UAP's entitlement to a security interest. Now, let's talk about whether or not those two major components were novated by this alleged oral agreement. Well, if you look at the debt obligation, the forgiveness of the debt that they are alleging occurred was contingent upon a repayment down to a threshold level of $400,000. The record is uncontested that they never got to that level. So whether or not there would ever have been any forgiveness of the debt is not an issue. It's a complete red herring because they never got there. Well, wait a minute. The question is not whether they got there. The question is whether or not the agreement that they contend they had, which for the moment I'm going to assume that they did, but that's subject to proof, but they claim they have an oral agreement that they will have an opportunity to run this for 5 years, and if at the end of 5 years they've paid it down to about $400,000, they can walk away from that amount. But let's look at it. If they're saying they never did that, isn't the point I'm addressing? The question is whether they had a contract that allowed them to try to do that. But let's look at it a different way. What if at the end of 5 years they had not paid it down to $400,000, and then by their own admission, the full amount of the loan would still be due in owing? That may very well be true, sure. And that's uncontested. The question is whether the contract has been novated. The question is whether that new contract has been fulfilled. Well, no, it is a question of whether it's been novated, because what it deals with is whether or not there has been a clear intent by the parties to extinguish the obligation of the repayment of the full amount due under the loan. And what they've come forward with ---- The same problem that you and I had at the beginning as to what the definition of novation is in terms of whether or not you have to substitute everything so that we're no longer talking about an indebtedness, but we're talking about sales of catfish, meaning your argument is so long as we're talking about a continuing indebtedness, it's impossible to have a novation. No. If there had been ---- Let's reframe it this way. You're saying because they ---- not that it was the indebtedness, but that the amount of the indebtedness remained the same, right? Right. So is that ---- so what they would have had to agree to do was to reduce whatever the outstanding amount was as well as change the ---- as allegedly they did, change the work out or the payment terms. Right. Not only what would have to have been changed would be the amount due in owing. Yeah. But also ---- Why? When that is due in owing. Why? Well, otherwise you could have a contract where you have to repay a million dollars and you come in and you say, okay, well, no, I've actually got ---- you novated that. You said I only have to repay $2, which is pretty close to a scenario that we're talking about. You only have to pay less than half of what you owe back, and this is all oral, and the court is going to enforce that type of thing. In fact, the older law dealing with enforcement of oral agreements made a specific exception dealing with whether you could have a subsequent oral agreement to say, oh, well, I know I originally wrote down and agreed to repay a million dollars, but I'm only ---- you told me I only had to repay a portion of it. But let me address the second component, because that's just one of the issues, and that is the continuing security interest that UAP financial services undoubtedly had in any type of crop proceeds. They admit that an entire component of their alleged oral agreement is for there to be a subordination in 1997, in 1998, in 1999. What are they subordinating? They are subordinating their continuing lien interest and security interest in the crop proceeds. And what is the genesis of that security interest? It is the 1994 loan agreement. And that is not an insignificant component. That is the collateral securing this loan obligation. There are entire ---- Are you talking about the UCC filings? The UCC filings and the security agreement, which is a whole separate document containing an integration clause that makes up part of the 1994 loan documents. That security agreement, which was a continuing security interest in any crop proceeds, continued to exist. The Court is still looking at me puzzled. I don't know if I'm ---- It continues to exist, but that doesn't answer my question as to whether or not it I still have the same difficulty, because you seem to be telling me that novation is legally impossible, irrespective of what the parties agreed to. Novation is legally impossible if the new contract contains elements that are substantially similar to the old contract. If you had ---- if you wanted to novate this document, number one, in writing, I would say this document supersedes and replaces in whole the 1994 loan documents. Then you have a novation. With the terms that are alleged to be oral? I'm sorry. Can you repeat the question? You said it would be a novation if, in fact, the new written document was verbatim how the new oral agreement has been characterized. As long as it was in writing, the fact that it continued the security interest that was originated with the 1994 agreement and that it still provided that if they failed over the five years to pay down to 400, then the full amount would be due, if that were in writing, that would constitute a novation in your view? In writing, if there was a statement, because the law is clear. It says a clear intention on the parties to extinguish the prior obligations, to novate the earlier agreement. And I would think that in good practice, since they had two counsel, Mr. Rednick and Bankruptcy Counsel, had this agreement, in fact, existed, that there would have been something in writing saying this agreement replaces, novates, supersedes the 1994 loan agreement. But setting that aside, setting that aside, what we're dealing with here is an alleged oral agreement that is modifying certain components of the 1994 loan agreement, but not extinguishing them. And the clear example of that is the security agreement. It is modifying it in the sense that it's saying, all right, you have to continue to subordinate your existing security interest, but it's not extinguishing the security interest. That security interest, which was created by virtue of the security agreement, part of the loan documents, continued to exist. Well, of course it continued to exist, but if we believe them, and I continue to say subject to proof, but if we believe them that what the oral agreement was, the security agreement was substantially modified because they were subordinated to the new lenders. I mean, it's not the same security agreement they had before where they were top dog. Now, what was modified would have been whether or not they were in the first position, for example. Well, that's exactly what I said. They were not. They were subordinated. And where do I find the factual premise that Judge Fletcher has just put to you in the summary judgment documents? Which factual premise? That there's been an ovation. There is not. Facts concerning an ovation. That's the other problem. An ovation was never pled as part of the original complaint in any of the interrogatory answers. The first time it shows up at all is in response to our summary judgment motion. And we've cited the court's case law holding that a summary judgment response is not a substitute for an amended pleading. And we've also cited the court to a series of cases and also Rule 8c, albeit dealing with affirmative defenses, which would suggest that if you were dealing with something as significant as an ovation, you need to plead it affirmatively, which it never was done. Now, where is the other evidence in the record that is cited that suggests that there are some of the key elements of the 1994 loan agreement? Well, that's not in the record. All we have are these alleged oral claims where we were going to continue a subordination beyond 1998, where we were going to continue to split proceeds beyond 1998, both of which are in direct conflict with the continuing security agreement and security interests that we had. We didn't have to split our proceeds according to our continuing security interests. And the mere fact that that was something that they were requiring to be done, that the 60-40 split had to be redone every year, why? Because we continue to have the right to collect all of the proceeds. Does that answer the Court's question? Well, I hope it does. If it doesn't, I will try to address some of these other components later. There was a question about whether or not this internal memo dealing with interest constituted part of the agreement. And if the Court looks to that internal memo, the internal memo was an accounting internal memo, and it dealt with how UAP Financial Services was going to deal with the accumulation of interest on the account. But at the end of that document, which is record site 155, it says, however, if proceeds are sufficient to pay all principal amounts, then interest will be recalculated and collection of such will ensue. So this wasn't even a forever forgiveness of interest, but rather an internal accounting document that was that would deal with deal with that component. And I believe the last question that the Court asked was what the debt was. We've cited the Court to the record sites 331 through 334, showing there was in excess of $800,000 in principal. The difference to a million is the interest since 1994. Under Section 1698, the California legislature has made clear there are specific examples and instances whereby an integrated document, which we uncontestedly have here, can be modified by a claim of a subsequent oral agreement. Under 1698B, which deals with full execution of the parties, the appellant would have the Court ignore the specific language that says executed by both parties. It's in the plural. We've cited the Court to Section 1661 that defines what a fully executed document is. Moreover, if what you're dealing with is an oral, an un-executed or only partially executed agreement, that's what would be dealt with under Subsection C, which says an un-executed oral modification. And that is only enforceable if you have new consideration and in the absence of an integration clause, which you don't have here. And I'm just wondering about the response you got to in response to Judge Beezer's question about, which is basically a procedural answer, which may be a good answer, that whether or not there is novation, it's impossible for him to argue novation because he raises it too late. Now, you're saying he should have said novation in the complaint, or what should he have done?  Yes. If you are pleading to say novation in the complaint violates Rule 8, is that the problem? Well, Rule 8C deals with novation being required to be pled as a component of an affirmative defense. But to the extent that you are pleading that an oral agreement novated a 1994 written loan document, then, yes, I think you were obligated to do that. Now, do we have a copy of the rules up here on the bench? I don't think so. You say Rule 8. I'd have to look at it. Rule 8C says? Novation is an affirmative defense that must be specifically pled. It deals with it in the context of an affirmative defense. However, there's no reason why, if what you're dealing with is a claim of novation, that for a complaint you wouldn't have to be that specific, and yet you would have to be for a claim, an affirmative defense. I don't think that's right. Rule 8C does say, in pleading to a preceding pleading, you have to put it as an affirmative defense. It says nothing about what has to be in the complaint. Rule 8A is the complaint. But in any pleading, up to the response to summary judgment motion, in any discovery Assume for the moment, I understand you're disputing me, and I'm trying to move fast because we're short on time, but assume for the moment that it's pled properly, which I understand you dispute, but assume that he satisfied Rule 8. Is there something else that says that he is somehow not able to make that argument at summary judgment or that he has insufficiently made the argument at summary judgment? I think that the record that the appellant cited the trial court to in the summary judgment pleadings below was insufficient to show that this alleged oral agreement negated or novated each of the key components of the 1994 loan document. And that's why I was pointing the court to, is the existence of the continuing security interest. Yes. So we're back to the substantive argument.  Well, to the substantive argument, but also to the lack of a record citation, the lack of summary judgment evidence sufficient to give rise to a triable issue of fact on whether novation in fact existed or could have existed. You said two things. One is citation of the gentleman's record. Are you complaining it may be in the record, but he didn't cite to it, or are you saying it's not in the record? I'm saying it's not in the record. The facts of novation are not in an affidavit in response to the motion for summary judgment. The facts that support a claim of novation of the 1994 loan agreement are not in the response to the motion for summary judgment. In the response to the motion for summary judgment, there's no claim of novation, nor are the documents appended. The facts support a novation. Well, that's where I think that the Court and I may be at odds, because the facts that are cited in support of the novation, I don't think those documents extinguish or overlap with the 1994 loan agreement. But he does not have only documents to support the novation. In fact, the bulk of his argument in favor of novation is oral. I mean, if all he had was documents, he loses, period, under any theory. Right. And even if you take the oral agreement and you write down on a piece of paper what you think this oral agreement consisted of, and you compare that to the written agreement, 1994 agreement, I don't believe that the oral agreement that they have alleged novates each of the key components of the 1994 loan agreement. Well, therefore, a substantive question is whether or not a new contract that substantially And I would disagree that it substantially overlaps with each of the key components of the 1994 loan document.  Thank you. Thank you. Helpful argument. Blue Bible. Thank you. I'll try to be as quick as possible on this. First of all, the primary issue that I think was addressed is the novation issue. I want to make sure that we don't lose sight of the estoppel section of Part D as well, because that is a primary argument that needs to be reconciled, which the underlying court failed to do. And that in itself can save this case and warrants remand. Now, on the issue of novation, there are a couple of components that were argued as not novated. What did the plaintiffs agree to in writing that stops them from making the arguments they're making now? I'm sorry. Let me make sure I understand. What did the plaintiffs agree to? The lender. What did the lender agree to in writing that it stops them? Yeah, that it stops them from asserting a collection now. It's not writing. It's conduct. Well, but wait a minute. You said any modification they made that bound them would be in writing, right? I said that a substantial part of the modifications that were agreed to are reflected in writings. No. But you said a party wasn't bound. A party to be bound is the party that had to do the writing. A party that – I think that that's reciting it backwards. A party that does the writing can be bound by that writing. Right. And they made a writing that has stopped them from asserting a collection of their claim. Some writings which go to evidence the underlying agreement which was made. They did? Yes. They wrote something? Where's that? It's a collection of documents. For example, the internal memorandum noting that the agreement was to cease interest. We have, in effect, what happened in 97, all documented aspects. We have what started to happen in 98. We have offers, written offers from them saying, well, we're going to try to work out the 6040. Offers have not been accepted, so they're not contract modifications. There was testimony that the 6040 split and the – I'm not sure I understand what you're asking. You say some of these memoranda that they wrote are offers to settle. So you receive an offer to settle. Does that result in a stopping them from collecting their judgment when the offer is not accepted? If the offer is not accepted, no. Okay. That's not evidence of a modification of anything. It's just an offer. But what we have is we had testimony that said that was essentially worked out and accepted. What we have is in late 95, early 96, offer and acceptance of that in the form of an oral agreement, which ends up getting reflected by certain documents. Getting back to a couple of the points, though. Okay. 30 seconds. Okay. Primary point. There was an argument of novation and pleading I want to address. Novation only has to be pleaded in response. That's why it's set out as an affirmative defense. That's what happened in this case. Plaintiffs pled in their original complaint all aspects of this new agreement. They didn't call it a novation. What happened was UAP moved to set aside the agreement. Plaintiffs raised the novation argument as a defense to what they were asserting to dismiss this case. There's not a necessity to plead a novation until it was put into motion. We understand that. I understand there's a dispute between you, but we understand the argument. Okay. Nothing else? Okay. Thank you very much. Nice argument. I'm sorry you had to wait till the end. Okay. The case of Fanucchi and Alimi Farms versus UAP is now submitted for decision, and we will be in recess until Friday morning. Thank you. Thank you.
judges: Beezer, W. Fletcher, Fisher